IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:21-CT-3256-M

| | | |
|---|---|---|
| JAMES REEVES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| GABRIEL DAVIS, et al., | ) ) ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motions for summary judgment [D.E. 37, 49]. The motions have been fully briefed. Also before the court are defendant Dolores' motion to seal [D.E. 40] and plaintiff's motion to disregard filings [D.E. 66]. For the reasons stated below, defendant Potter's motion for summary judgment is granted; her motion to seal is denied; defendants Davis and Scallan's motion for summary judgment is granted in part and denied in part; and plaintiff's motion to disregard filings is granted in part and denied in part.

PROCEDURAL HISTORY

On August 25, 2021, plaintiff, a state inmate proceeding pro se, filed the instant action pursuant to 42 U.S.C. § 1983 alleging defendants were deliberately indifferent to his serious medical needs by failing to provide plaintiff adequate medical care when he suffered a stroke, in violation of the Eighth Amendment to the United States Constitution. (Compl. [D.E. 1] at 5–9). On June 13, 2022, the court conducted a frivolity review of the complaint and allowed the action

---

[1] Defendants indicate the correct spelling of defendant "Joshua Scallion," is in fact "Joshua Scallan." Accordingly, the court will direct the clerk to amend the docket to reflect the correct spelling.

to proceed as to defendants Gabriel Davis ("Davis"), Joshua Scallan ("Scallan"), and Dolores L. Potter ("Potter"). (Mar. 21, 2022, Ord. [D.E. 9] at 5–6).

On July 1, 2022, North Carolina Prisoner Legal Services ("NCPLS") entered a notice of representation of behalf of plaintiff. [D.E. 11]. After an extended period of discovery and extension of the dispositive motion deadline, defendant Potter filed her motion for summary judgment and motion to seal plaintiff's medical records on November 9, 2023. Defendant Potter's motion for summary judgment relies on a memorandum in support and plaintiff's medical records. However, Potter failed to file a statement of material facts and appendix in support of her motions as required under Local Civil Rule 56.1. On November 13, 2024, a notice of deficiency was entered directing Potter to correct the filing deficiencies. On November 14, 2024, she filed the requisite statement of material facts and appendix of exhibits thereto, which includes Potter's declaration and plaintiff's medical records.

On November 29, 2023, plaintiff responded in opposition to Potter's motion to seal. On December 5, 2023, plaintiff responded in opposition to Potter's motion for summary judgment relying on a memorandum on law and incorporated statement of material facts, as well as the following exhibits: (1) plaintiff's declaration; (2) defendants' responses to plaintiff's discovery requests; (3) the North Carolina Department of Public Safety ("NCDPS") Prisons Health and Wellness Services Policies and Procedures; (4) the Pamlico Correctional Institution ("CI") medical standard operating procedures; (5) selections from the NCDPS Health Services Policy and Procedure Manual; (6) NCDPS Introduction to Telephone Triage PowerPoint; (7) symptom assessment information sheets; (8) plaintiff's medical records; (9) grievance documents; and (10) sick call request.

2

On December 19, 2023, defendants Davis and Scallan filed their summary judgment motion relying on a memorandum in support, statement of material facts, and appendix exhibits thereto, which includes: (1) declaration of counsel; (2) plaintiff's North Carolina Department of Adult Corrections offender public information; (3) list of plaintiff's infractions; and (4) defendants Davis and Scallan's declarations.

On December 27, 2023, the court granted defendant Potter's motion to reply out of time. On January 2, 2024, plaintiff filed an opposing statement of material facts to defendant Potter's memorandum in support of her motion for summary judgment. That same day, plaintiff responded in opposition to defendants Davis and Scallan's summary judgment motion. In support, plaintiff relied on a memorandum of law, opposing statement of material facts, and an appendix of exhibits thereto, which include: (1) the exhibits listed in plaintiff's previously filed appendix; (2) unsworn statement by inmate Bernardo Montano; (3) witness statement submitted by inmate David Mason Bangs; (4) declaration of Brianna Stone, a former correctional officer at Pamlico CI; and (5) plaintiff's public offender information and infraction history that were included as exhibits in defendants Davis and Scallan's appendix.

On January 2, plaintiff filed an opposing statement of material facts as to defendant Potter. On January 5, 2024, the court granted plaintiff's motion for leave to file an opposing statement of facts, in which he asserted he had not received defendant Potter's documents filed in support of her motion for summary judgment. The court directed Potter to re-serve the documents and allowed plaintiff an extension for any further response to defendant Potter's motion for summary judgment. On January 23, 2024, plaintiff timely responded relying on a memorandum of law, opposing statement of material facts and exhibits previously listed in his December 5, 2023,

3

appendix. That same day, plaintiff filed the instant motion to disregard previous filings. On February 2, 2024, defendant Potter replied to plaintiff's response in opposition. On February 16, 2024, plaintiff filed a sur-reply.

STATEMENT OF THE FACTS

The facts of this case, in the light most favorable to plaintiff, are summarized as follows. At all times relevant to the instant action, plaintiff was an inmate housed in Pamlico CI. (Stone Decl. [D.E. 61-3] ¶¶ 2-8). At approximately 6:00 a.m., on Saturday, February 27, 2021, plaintiff woke experiencing symptoms leading him to believe he was having a stroke. (Pl. Decl. [D.E. 47-2] at 1; Pl. App. Ex. H [D.E. 47-3] at 111). Plaintiff informed the floor officer that he was suffering from a stroke and declared a medical emergency. (Pl. Decl. [D.E. 47-2] at 1; Scallan Decl. [D.E. 52-5] ¶ 4). The floor officer escorted plaintiff to a sergeant's office, where plaintiff collapsed but caught himself on a footstool. (Pl. Decl. [D.E. 47-2] at 2). The sergeant escorted plaintiff to defendant Davis, the officer in charge, in the medical unit and informed Davis that plaintiff was reporting a medical emergency. (Id.; Stone Decl. [D.E. 61-3] ¶ 4; Davis Decl. [D.E. 52-4] ¶ 3). When plaintiff arrived in the medical unit, plaintiff was feeling weak, sick on his stomach, and like his head was exploding. (Pl. Decl. [D.E. 47-2] at 2; Pl. App. Ex. H [D.E. 47-3] at 88; Stone Decl. [D.E. 61-3] ¶ 4). Plaintiff sat down in a desk chair with his head on the desk to prevent himself from passing out, puking, or collapsing. (Pl. Decl. [D.E. 47-2] at 2). At his time, defendant Scallan, a correction sergeant, arrived and took over for the sergeant escorting plaintiff. (Id. at 3; Scallan Decl. [D.E. 52-5] ¶ 5).

Pamlico CI does not have medical staff on site and, when medical personnel are not present at the facility, it is assigned a registered nurse to provide triage services to the facility via telephone.

4

(Davis Decl. [D.E. 52-4] ¶ 5; Scallan Decl. [D.E. 52-5] ¶ 4). Davis phoned defendant Potter, a registered nurse for the Department of Protective Services, located at Maury CI and assigned for triage services on February 27. (Pl. Decl. [D.E. 47-2] at 2; Pl. App. Ex. H [D.E. 47-3] at 111; Stone Decl. [D.E. 61-3] ¶ 6; Potter Decl. [D.E. 44-1] ¶ 3; Davis Decl. [D.E. 52-4] ¶ 9; Scallan Decl. [D.E. 52-5] ¶ 5). Plaintiff presented with left leg and arm numbness and nausea, as well as sweating and a headache. (Pl. App. Ex. H [D.E. 47-3] at 111, 115; Potter Decl. [D.E. 44-1] ¶ 10; Davis Decl. [D.E. 52-4] ¶ 8).

Davis asked plaintiff if he needed to use the bathroom, and plaintiff's response was slurred. (Pl. Decl. [D.E. 47-2] at 3). Davis could not understand plaintiff and directed plaintiff to sit up. (Id.). Plaintiff tried to sit up and speak clearly. (Id.). Davis then directed plaintiff to stand up and hold his hands straight out. (Id.). Plaintiff complied but was shaking. (Id.). Davis further instructed plaintiff to put his palms up and then turn his hands over. (Id.). Plaintiff again complied. (Id.). Davis returned to speaking with Potter on the phone, and plaintiff returned to his previous position sitting with his head on the desk to ease the pressure in his head. (Id. at 3–4).

Shortly thereafter, Davis directed plaintiff to get up. (Id. at 4). Thinking Davis was readying plaintiff for transport to the hospital, plaintiff requested to stay in the same position with his head down until everything was ready. (Id.). Davis said something along the line of plaintiff "was full of it" and informed him that Potter directed Davis to give plaintiff six ibuprofen and send him back to his cell. (Id.; Pl. App. Ex. H [D.E. 47-3] at 113; Stone Decl. [D.E. 61-3] ¶ 8; Davis Decl. [D.E. 52-4] ¶ 10; Scallan Decl. [D.E. 52-5] ¶ 5). Davis also indicated Potter was the ultimate decision maker for whether plaintiff went to the hospital. (Pl. Decl. [D.E. 47-2] at 5). However, because there is no medical staff present at Pamlico CI, the officer in charge has the ultimate

5

authority in deciding when to send an inmate to an outside emergency medical facility. (Stone Decl. [D.E. 61-3] ¶ 4; Scallan Decl. [D.E. 52-5] ¶ 4). Plaintiff never spoke to Potter. (Pl. Decl. [D.E. 47-2] at 8; Stone Decl. [D.E. 61-3] ¶ 6).

Medical Unit Officer Brianna Stone ("Stone") was present at the time of the phone call. (Stone Decl. [D.E. 61-3] ¶ 4). Defendant Davis did not appear interested in plaintiff's statements about his symptoms and did not take plaintiff's blood pressure or check his pulse. (Id. ¶ 4). Further, when speaking with defendant Potter, Davis minimized and downplayed plaintiff's symptoms. (Id. ¶ 6). Davis informed Potter that plaintiff may be under the influence of K-2, but plaintiff was not a known drug user and was not behaving like other inmates under the influence. (Id. ¶ 7).

Beginning to escort plaintiff back to his cell, defendant Scallan said, "[Davis] said to get up and return to your cell now!" (Pl. Decl. [D.E. 47-2] at 4). Plaintiff raised his head and tried to tell defendants he needed to go to the hospital. (Id.). However, plaintiff did not want to be seen as disobeying a direct order. (Id.). Plaintiff struggled to get to his feet, and he took the ibuprofen. (Id.). Scallan began escorting plaintiff to his cell. (Id. at 5; Scallan Decl. [D.E. 52-5] ¶ 5).

Once plaintiff and Scallan were in the hallway, plaintiff made a slurred plea to Scallan to take him to the hospital stating he was having a stroke. (Id.) Scallan responded saying, "Well, we ain't doctors and nurses." (Id.). Once back on his unit, Scallan left plaintiff to stumble back to his cell. (Id.). Plaintiff passed out in his cell and woke up at approximately 1:00 p.m. (Id.). Plaintiff had not improved and begged a sergeant to call the hospital. (Id.). The sergeant stated, "I know you need help, but [Davis] is the [officer in charge,] and I can't override his authority[.] Nobody can[.] [S]orry, but I'll log it in so the next shift knows to keep an eye on you." (Id.).

6

When plaintiff woke on Sunday morning, the left side of his body was weak, his tongue felt thick, and his head "still felt out of wack," but his stumbling and slurred speech had improved. (Id. at 6). Sunday afternoon, plaintiff filled out a regular sick call request to follow up with medical and a grievance form. (Id.; Pl. App. Ex. K [D.E. 47-3] at 119–120, 122; Pl. App. Ex. L [D.E. 47-3] at 121). On Tuesday, March 2, 2021, at approximately 3:00 p.m., plaintiff was called to medical regarding his sick call about a stroke. (Pl. Decl. [D.E. 47-2] at 6). The nurse examined plaintiff for less than two minutes before sending plaintiff to the hospital. (Id.; Pl. App. Ex. M [D.E. 47-3] at 128–29). At the hospital, after diagnostic tests were run, plaintiff was diagnosed with having suffered a stroke and a tear in an artery in his brain. (Pl. Decl. [D.E. 47-2] at 7; Pl. App. Ex. H [D.E. 47-3] at 88, 90–91).

Plaintiff was told he might have to be flown by helicopter to another hospital for emergency brain surgery. (Pl. Decl. [D.E. 47-2] at 7). At this time, the nurse at the prison called one of plaintiff's escorts and asked to speak with plaintiff on speaker phone. (Id.). The nurse indicated the hospital has been in touch with her, and before the final call to transfer plaintiff was made, the treating specialist wanted a video call with plaintiff to speak with him due to the amount of time plaintiff went untreated. (Id.). The specialist concluded the best course of action was to wait. (Id.).

Plaintiff was in the hospital for two and a half days. (Id. at 8). He was prescribed some short-term medication, as well as medication he will take for the rest of his life. (Id.). Upon return to Pamlico CI, plaintiff was placed in segregation for two weeks. (Id.). Plaintiff has regular appointments with a neurologist and continues to experience eye twitching, headaches, memory issues, and time distortion. (Id. at 8; Pl. App. Ex. M [D.E. 47-3] at 123–26, 131–33).

7

COURT'S DISCUSSION

A.  Motion to Seal [D.E. 40]

Defendant Potter seeks to seal docket entry 39 because it contains plaintiff's medical records. (Mot. to Seal Mem. [D.E. 41] at 2). Plaintiff opposes the motion and has publicly filed the same medical records in one of his appendices of exhibits. (See Pl. App. Ex. H [D.E. 47-3] at 116-18). The parties have openly discussed plaintiff's medical conditions and treatment in unsealed filings. Thus, the court concludes Potter has not met her burden on the motions to seal. See Doe v. Public Citizen, 749 F.3d 246, 266–67 (4th Cir. 2014); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Accordingly, the motion is denied.

B.  Motion to Disregard Previous Filings [D.E. 66]

Because plaintiff had to be re-served with defendant Potter's summary judgment documents, plaintiff seeks to have the court disregard his filings at docket entries 47, 47-1, and 60, and defendant Potter's filings at docket entries 56 and 57. (Pl. Mot. Disregard [D.E. 66] at 1). Plaintiff's documents are his original response in opposition to Potter's motion for summary judgment and supporting memorandum of law, and an opposing statement of material fact. Potter's documents are a reply to plaintiff's response at docket entry 47 and a statement of material facts addressing plaintiff corresponding statement of facts in docket entry 47-1. The court construes plaintiff's motion as a motion to withdraw his filings and strike Potter's. Defendant Potter did not respond to the motion.

As noted above, after receiving Potter's summary judgment documents, plaintiff filed a renewed response supported by a memorandum of law, statement of material facts, and appendix

8

of exhibits thereto. Accordingly, the court grants plaintiff's motion to withdraw his filings. However, the court denies plaintiff's motion to strike Potter's filings where plaintiff has provided no explanation supporting striking such documents or allege any prejudice.

C.   Motions for Summary Judgment [D.E. 37, 49]

　　1.   Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). For cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 247–48, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

9

2. Analysis

As noted, plaintiff alleges defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs by failing to provide plaintiff adequate medical care when he suffered a stroke. The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation omitted). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). Medically, a plaintiff demonstrates a basic human need is where he has received a diagnosis "by a physician as mandating treatment" or the medical need "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citations omitted).

The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted) (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see Miltier v. Beorn, 896 F.2d 848, 851 (4th

Cir. 1990) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."), overruled in part on other grounds by Farmer, 511 U.S. at 837. Nevertheless, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (finding a defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (requiring that the prison official knew of and disregarded an "objectively serious condition, medical need, or risk of harm."). Beyond such actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241 (quotation marks and citation omitted). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Disagreements over forms of treatment concern medical judgments, not the Eighth Amendment, id., and mere negligence in diagnosis or treatment does not state a constitutional claim, see Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

Here, plaintiff has demonstrated a genuine dispute of fact on the objective prong. The medical records show plaintiff's pain, nausea, and limb numbness were caused by a stroke. (Pl.

Decl. [D.E. 47-2] at 7; Pl. App. Ex. H [D.E. 47-3] at 88, 90–91, 111, 115). To the extent plaintiff was not diagnosed until over three days later, there remains a triable issue of fact as to whether the condition was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241.

As to the second prong, plaintiff fails to establish defendants Scallan and Potter were deliberately indifferent. As noted above, Scallan escorted plaintiff while he was in the medical unit. (Pl. Decl. [D.E. 47-2] at 2; Scallan Decl. [D.E. 52-5] ¶ 5). He then escorted plaintiff back to his housing unit after the phone call with Potter. (Pl. Decl. [D.E. 47-2] at 5; Scallan Decl. [D.E. 52-5] ¶ 5). Although plaintiff pleaded with Scallan to take him to the hospital, defendants generally are entitled to rely on the expertise of non-medical prison officials with respect to his medical treatment. See Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (quotation omitted)); see also Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); Lewis v. Hoke Cnty., No. 1:17CV987, 2020 WL 5213929, at *7 (M.D.N.C. Sept. 1, 2020) ("[P]rison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals." (citation omitted)), report and recommendation adopted, No. 1:17CV987, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022), aff'd, No. 22-6171, 2022 WL 1641282 (4th Cir. May 24, 2022). Thus, Scallan could properly rely on Potter's medical opinions.

12

Regarding defendant Potter, the record demonstrates that she received a phone call from defendant Davis regarding plaintiff. (Pl. Decl. [D.E. 47-2] at 2; Pl. App. Ex. H [D.E. 47-3] at 111; Stone Decl. [D.E. 61-3] ¶ 6; Potter Decl. [D.E. 44-1] ¶ 3). She obtained information from Davis about plaintiff's symptoms. (Pl. App. Ex. H [D.E. 47-3] at 111, 115; Potter Decl. [D.E. 44-1] ¶ 10; Davis Decl. [D.E. 52-4] ¶ 8). She then prescribed ibuprofen to treat plaintiff's pain. (Pl. Decl. [D.E. 47-2] at 2; Pl. App. Ex. H [D.E. 47-3] at 111; Stone Decl. [D.E. 61-3] ¶ 6; Potter Decl. [D.E. 44-1] ¶ 3). Plaintiff's disagreement with Potter's course of treatment does not establish that Potter deliberately disregarded plaintiff's symptoms. See Jackson, 775 F.3d at 178 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference."). Similarly, Potter's misdiagnosis of plaintiff's symptoms does not establish an Eighth Amendment violation because such claims amount to at most medical malpractice. See Wright, 766 F.2d at 849.

However, the disparate statements and declarations regarding defendant Davis' treatment of plaintiff cannot be reconciled. Specifically, for example, whether Davis accurately replayed plaintiff's symptoms to Potter. Although Davis relayed to Potter that plaintiff presented with left leg and arm numbness and nausea, as well as sweating and a headache, medical unit officer Stone states that Davis was not interested in plaintiff's statements regarding his symptoms, did not take plaintiff's pulse or blood pressure, and minimized and downplayed plaintiff's symptoms. (Pl. App. Ex. H [D.E. 47-3] at 111, 115; Potter Decl. [D.E. 44-1] ¶ 10; Davis Decl. [D.E. 52-4] ¶ 8; Stone Decl. [D.E. 61-3] ¶¶ 4–6). Davis' statement that plaintiff was "full of it" reflects a mentality of

downplaying plaintiff's symptoms. (Pl. Decl. [D.E. 47-2] at 4; Stone Decl. [D.E. 61-3] ¶ 8). Because Pamlico CI has no medical staff present, Davis had the ultimate authority in deciding whether to send plaintiff to an outside emergency medical facility. Further, to the extent Davis intentionally downplayed plaintiff's systems, Potter would not have had the information required to accurately diagnose plaintiff. (Stone Decl. [D.E. 61-3] ¶ 4; Scallan Decl. [D.E. 52-5] ¶ 4).

After viewing the evidence and the inferences drawn therefrom in the light most favorable to plaintiff, Scott 550 U.S. at 378, issues of material fact presently preclude entry of summary judgment for defendant Davis, Anderson, 477 U.S. at 247–48.

Further, although defendant Davis contends that qualified immunity insulates him from suit, because there are genuine issues of material fact as to plaintiff's deliberate indifference claims, the present record also precludes a qualified immunity finding on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–66 (2014); Brooks, 924 F.3d at 119.

## CONCLUSION

For the reasons discussed above, defendant Potter's motion to seal [D.E. 40] is DENIED, and plaintiff's motion to disregard filings [D.E. 66] is GRANTED IN PART AND DENIED IN PART as provided herein. Defendant Potter's motion for summary judgment [D.E. 37] is GRANTED. Defendants' Davis and Scallan's motion for summary judgment [D.E. 49] is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as to defendant Scallan and denied as to defendant Davis. The court REFERS the case to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed concerning the settlement conference, and the date on which it will be held. The

14

court also APPOINTS NCPLS for the limited purpose of assisting plaintiff in the court-hosted settlement conference. See Standing Order 21-SO-11 at ¶ 7. The court further DIRECTS the clerk to send a copy of this order to notify NCPLS of its appointment. Lastly, the clerk is DIRECTED to amend the docket as provided in footnote one.

SO ORDERED, this the 30th day of September, 2024.

*Richard E Myers II*
RICHARD E. MYERS, II
Chief United States District Judge

15

Case 5:21-ct-03256-M   Document 71   Filed 09/30/24   Page 15 of 15